**Sharon K. RAINES and Herman D. Raines, Appellants,**

v.

**Lucinda L. YOST, Respondent.**

**No. KCD 27286.**

Missouri Court of Appeals, Kansas City District.

July 6, 1976.

Martin M. Bauman, St. Joseph, for appellants.

R. A. Brown, Jr., St. Joseph, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Plaintiff Sharon K. Raines sued for personal injuries suffered by her in an automobile accident and her husband, Herman D. Raines, sued for loss of consortium. Defendant counterclaimed against Sharon for personal injuries suffered by defendant in that accident. The jury found for defendant on plaintiffs' claims and for Sharon on defendant's counterclaim. Plaintiffs appeal, assigning as their sole point that there was not sufficient evidence to support submission to the jury of contributory negligence on the part of Sharon by failing to maintain a careful lookout.

The accident occurred at approximately 8:00 A.M., September 2, 1972, in a rural area of Andrew County, Missouri. Defendant, operating a Mustang automobile, backed out of a driveway on the north side

of Route O and continued to back south-west on to the south half of the highway in order to proceed eastwardly. At that time, Sharon was driving east on Route O at about 55 miles per hour, returning home from working the night shift from 10:00 P.M., to 7:30 A.M., as a nurse's aide in a rest home.

Sharon's first opportunity to see the Mustang was when she crested a small hill to the west of the point where defendant entered the highway. Sharon testified that she applied her brakes but could not stop, with the result that her Dodge ran into the Mustang.

Plaintiffs contend that the trial court erred in submitting to the jury the issue as to whether Sharon maintained a careful lookout because: (a) there was no evidence that she could have seen the Mustang sooner than she did; and (b) that even if she had seen the Mustang sooner, there was no evidence that she could have done anything in time to avoid the accident.

*As to (a).* The investigating officers testified that the sighting distance from which a motorist approaching from the west could have seen the point of impact was 315 feet. Sharon on the other hand testified on deposition that she did not see the Mustang until she was two to three car lengths away from it. Since the evidence showed that her Dodge was 17 feet in length, that means that she was within 51 feet of the Mustang before she first saw it. Had she been attentive, Sharon could have seen the Mustang when it was 264 feet further away than she actually did. On this testimony alone the jury could reasonably find, as it did, that Sharon had failed to maintain a vigilant lookout. Furthermore, an analysis of the additional facts considered below further tends to show that Sharon did not keep a careful lookout in the exercise of the highest degree of care, the standard which the law enjoined upon her.

*As to (b).* Plaintiffs lay their greatest emphasis on the claim that the evidence failed to show that Sharon's alleged inattentiveness constituted the proximate cause of the accident. The law unquestionably does require that before plaintiffs can be barred from recovery, there must be evidence that Sharon could have seen the Mustang in time to take effective precautionary action. *Shelton v. Bruner,* 449 S.W.2d 673, 679 (Mo.App.1969). Plaintiffs claim that even assuming that Sharon could have seen the Mustang sooner, there is nothing to show that she could have done anything to avoid the accident.

The facts, however, warrant the conclusion that if Sharon had been attentive, she could have avoided the accident. As already stated, the investigating officers testified that she could have seen the Mustang when the Raines' Dodge was 315 feet west of the point of impact. At 55 miles per hour the Dodge was traveling 80′ 3″ per second. Allowing reaction time of ¾ second, 60 feet would be accounted for before Sharon was called upon to act. That left her 255 feet within which to take precautionary measures.

From the point at which Sharon could and should have acted, she had at least three seconds available to her. Defendant and all of the other occupants in the Mustang testified that by that time the Mustang was wholly in the eastbound lane on the south half of Route O. This testimony by defendant's witnesses was supported by the location of the debris at the scene of the accident, which was found by the investigating officers to be about 5 feet from the south edge of the highway. The testimony that the Mustang was wholly in the south half of the highway headed directly east was also supported by the physical fact that the damage from the collision was to the whole front of Raines' Dodge and all across the back of Yost's Mustang.

Route O measures 21 to 24 feet in width, and the Mustang was only 71″ (less than 6 feet) in width. There was nothing at all by way of traffic in the westbound lane either immediately before, at the time of, or immediately after the accident. That lane was therefore completely open for Sharon to use in order to pass the Mustang on the left. Sharon admits that she could have swerved to do so in "a matter of seconds,"

and this admission on her part accords with common experience.

Yet the evidence is uncontroverted that Sharon made no effort at all to swerve. On these facts the jury could reasonably find, as it did, that Sharon failed to exercise the highest degree of care in maintaining a careful lookout and that this failure proximately contributed to cause the accident. See *Bounds v. Scott Construction Co.,* 498 S.W.2d 765, l. c. 768 (Mo.1973).

Affirmed.

All concur.